At this time we'll hear Midamines v. KBC Bank. Thank you. Good morning. Good morning, Your Honor. May it please the Court. My name is Hassan Abbas. I'm representing Midamines SPRL Ltd. and myself, Pro Se. The issue before the Court here is whether the District Court abused its discretion in imposing $75,000 sanctions. I believe I was heavily sanctioned and unfairly sanctioned. And I believe the District Court abused its discretion, and I'll tell you why. The District Court recognized... Are you challenging the award itself or just the amount? Because I didn't think that the challenge to the award was properly before the Court on this appeal, but perhaps you want to speak to that. Yes, I'm challenging both, Your Honor. How do you challenge the award itself? Isn't that repeating earlier challenges? No. The case of Hensley v. Eckerhart, Your Honor, from the Supreme Court, and the case of Agent Orange product liability from the Second Circuit states as follows with respect to hours. It says, with respect to hours, a District Court must exclude from a fee request hours that are excessive, redundant, otherwise unnecessary due to overstaffing. That goes to the amount? Yes, to the amount. That goes to the amount. Okay. And I will discuss the broader issue of sanctions after I discuss the issue of the hours. Well, I think all that's in front of us is the computation. Fair, Your Honor, but... So there's no point in discussing something that's not in front of us. I mean, there are a lot of interesting things in the world, but this appeal just deals with the computation and whether it's reasonable. Okay. So the facts here show that ORIC overstaffed the motion with five lawyers, three senior partners, and two associates. I believe five lawyers was redundant, was not necessary, and it was unreasonable. The District Court had three methods by which it could have excluded the hours. One was going through the time entries. The other was a percentage across-the-board percentage cut, as was done in American Honda, where a fee request or a fee was slashed from $200,000 to $16,000. It was a 92% reduction. Here it would be from $75,000 to $5,000. And the third method by which it could have reduced the fees is by looking into the financial situation. As I informed the Court, I don't have the... There was a substantial reduction, right? It was 197.9. No, that's the 197.9 hours. Yeah. But there was not a single hour excluded by the District Court. That exercise needed to be performed under the Second Circuit precedent. But the billing record supported a much higher number, that's my question, before the District Court did the in-camera review, right? I don't believe it supported a much higher number. 138, 209, that's . . . I'm just wrong about that. Is that right? I don't believe so. I don't believe that the record supports all these hours that they have submitted. I didn't receive . . . That's not my question, though. My question is, wasn't the number of hours submitted significantly higher than the number the District Court approved? That's the question. It's a simple question. Can you answer that? No. The District Court awarded $75,000 based on this. This is what I received. I received all these blacked-out pages, and at the end of these pages here, it says $75,000. But the District Court did an in-camera review of the unredacted . . . Right. Is that right? Right. So this . . . Answer that question. Did the District Court review the unredacted . . . The District Court reviewed them in-camera. Yeah. I was not given the opportunity, so privilege was used as a sword and a shield against me. The Second Circuit said that in Rayvon Buelow, that fairness considerations apply here when privilege is used as a sword and a shield. So, I had no viewing of this. I challenged the hours basically blindly, just the total number of hours, saying that, look, this was overstaffed and it was overbilled. And the Supreme Court says, if a fee request is overstaffed, it's got to be reduced. It was staffed with partners and associates. Three senior partners. Each has considerable experience, about 30 years. It could have been done by one of the partners who responded. It didn't need two other senior partners and two other associates. So, our position is it was unnecessary. But, Your Honor, it worked both ways because the blended rate is under $400 an hour, which I understand nowadays is a real bargain. Well, Your Honor, I don't agree that it's a real bargain that I was sanctioned $75,000. I'm just saying. It's unfair. That is not. I would have preferred if one. I know, but I would have preferred. I would have preferred if one senior partner had worked five hours and billed me at $800 than to have five lawyers billing me at $400. We don't usually get to run our adversaries' staffing. I know, but the Supreme Court says if it's excessive, it's got to be reduced. If they had put 10 lawyers, the district court would simply say pay it. If they had submitted a fee of. That's not what the district court did. No. You're mischaracterizing what the district court did. After all, the district court calculated the load star and then reduced it. Now, you're coming up with other ways to reduce it, but the district court appreciated some of the concerns you've identified and reduced the fees. But it didn't apply the law, Your Honor. It didn't apply the reduction of. It calculated the load star and then reduced for some of the concerns that you've identified. It did not reduce a single hour out of the $197,000. It took it as is, the $197,000, $75,000, and just said pay it. This is what happened. And just let me go on to the filing injunction. If the district court had cut it in half again, would you pay it? Your Honor, I think we had this discussion previously. As I mentioned to the district court, and I mentioned earlier, I don't have that money. And the purpose of sanctions is deterrence, not financially to ruin a person. You're not planning to pay it no matter what. It's not that I'm not planning to pay it. I say I don't have the ability, and that's one of the methods by which the district court could have reduced. We don't have the ability to do it. We can't plan on doing it, can we? As to the filing injunction, Your Honor, yes, it must be reduced because it's overstaffed. That's what the law says. And if the district court doesn't apply the law, then who will apply the law, Your Honor? It must be applied. It says that if it's overstaffed with five, what if they have submitted with ten lawyers and $150,000, and not a single hour was reduced? That's not fair. And you wouldn't pay that either? Your Honor, if it was reduced, if it was reasonable, they had an obligation to exercise billing judgment when they submitted their bill. And they submit this overstaffed and overbilled, I can't pay it. As to the filing injunction, it's KVC who took my money. And I was trying to do good, and I was trying to get my money back, and I was sanctioned. I don't know why I was sanctioned. To this day, I don't know if it was under inherent powers or if it was under 28 USC. The Supreme Court said if there was no bad faith. I had no bad faith at all, so I should not have been sanctioned because I operated in good faith at all times, Your Honor. They took $150,000 from me. They took everything that I have, and now I'm being sanctioned. I think it's topsy-turvy, Your Honor. Okay, well, you have not reserved rebuttal. We'll hear the other side. Okay, thank you. Good morning. May it please the Court, Alvin Lee of Orrick-Harrington Sutcliffe on behalf of KVC Bank. These two appeals before the Court today are just the latest in a years-long campaign of frivolous and vexatious litigation brought by Mr. Abbas against both KVC and against my employer, the Orrick Law Firm. All of Mr. Abbas's various claims and motions over the past several years have been soundly rejected by every single court in which he has brought them, including by this court. And Mr. Abbas has been both warned and indeed sanctioned multiple times as a result of his vexatious tactics, again, including by this very court as well as others. Is there an issue now in this appeal as to whether Judge Sullivan properly denied him the opportunity to file a declaratory judgment action? Well, Your Honor, Judge Sullivan correctly concluded in the context and in the circumstances that the proposed declaratory judgment action that Mr. Abbas sought leave to file was nothing but a transparent attempt by Mr. Abbas to relitigate earlier failed claims that he had brought against KVC in his own name. Indeed, Mr. Abbas's new proposed action involves the exact same issue as his earlier claims that were already dismissed by the district court, and the claims were also rejected by this court. Mr. Abbas's only argument on the leave to file injunction is that he's now dropped himself as a plaintiff from that action, and so he should therefore be permitted to pursue all of those same claims again, but simply in the name of other corporate entities. But in the context of this appeal, it was Mr. Abbas himself who submitted the petition to Judge Sullivan seeking leave to file this declaratory judgment action in the name of those entities. Accordingly, Judge Sullivan, looking at the circumstances, properly concluded that Mr. Abbas was simply using those corporate entities for the improper purpose of evading the filing injunction that had been imposed against him and to relitigate claims, again, that he had previously brought in his own name, which had already been dismissed. Additionally, separate and apart from the improper and vexatious nature of Mr. Abbas's new proposed action, it was also appropriate for the district court to deny Mr. Abbas leave to file the action for two fundamental merits-based reasons that are abundantly clear from the record, and neither of which Mr. Abbas seriously contests in his briefing. The first of those is subject matter jurisdiction. One of the plaintiffs in this new proposed action is, mean to means, Congo, a foreign entity. KBC Bank is also a foreign entity. That destroys diversity. Therefore, no federal court would ever have subject matter jurisdiction to entertain a declaratory judgment action between the two. Can I just ask you, did he ever pursue actions in Belgium is the first question. The second question is, what's the status of the action in the Northern District of Illinois that he did file? Your Honor, I don't believe he ever has pursued an action in Belgium. Of course, our position all along has been that to the extent he believes he has any claims at all, he should be bringing them in Belgium, not in the United States. To your second question, Your Honor. That's the forum clause, right? Yes, exactly, Your Honor. The Northern District of Illinois case, we moved to dismiss it several months ago, and that motion is still pending at this time. It's not been resolved. It's not been resolved at this time. As Your Honor alluded to, there's a forum selection provision that has already been adjudicated by both the district court and this court. It's law of the case in this action that that forum selection provision binds both, mean to means, Illinois, and mean to means, Congo, which are the two plaintiffs in this new proposed action, and that they, therefore, cannot bring these claims against KBC in the United States. Very quickly, Your Honors, just with respect to the fee award determination, as we laid out in our papers, the district court's fee determination was a textbook, lodestar analysis. Judge Sullivan diligently reviewed all of OREC's fully unredacted billing statements and determined that both the rate charged and the number of hours spent by OREC were both reasonable and well within the scope of this court's monetary sanction that it imposed on Mr. Abbas. And as Your Honors pointed out— Mr. Abbas sort of raises the rhetorical question of how many OREC lawyers are required to take him on. Yes. To that point, Your Honor, he talks a lot about the fact that there were five lawyers on the file. In reality, it was one associate and one partner that performed more than 80 percent, I believe, of the hours. There was one senior partner that was the client relationship partner on the matter that billed less than a single hour, and then the other two attorneys played supporting roles and, I believe, combined only billed about 20 or 30 hours. And so he talks about— The number of hours calculated by Judge Sullivan is also less than the number of hours that appear to be reflected in the records that you submitted. Am I correct in that? Yes, Your Honor. As Your Honors pointed out earlier, the amount that was ultimately approved by Judge Sullivan was both well below what OREC actually charged and was also well below what KBC actually paid. Now, how did he get the lower number? I believe that OREC submitted the number that it thought would be an appropriate fee award, and to be conservative and to make sure that the award would be deemed reasonable itself, reduced the blended hourly rate that it proposed to Judge Sullivan. The rate or the number of hours? I believe both, Your Honor. Okay. Thank you. If there are any further questions, I'm happy to entertain them. No. Thank you. Thank you both. We'll reserve decision.